ROBERT S. BREWER, JR.
United States Attorney
KATHERINE L. PARKER
Assistant United States Attorney
California Bar No. 222629
Office of the United States Attorney
880 Front Street, Room 6293
San Diego, California 92101-8893
Tel.:          (619) 557-5610
Email:     *katherine.parker@usdoj.gov*

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENA CHILDS; DONALD CHILDS, T. CHILDS, a Minor, By and Through Her Guardian Ad Litem, Lena Childs; A. CHILDS, a Minor, By and Through Her Guardian Ad Litem, Lena Childs, <br><br> Plaintiffs, <br><br> v. <br><br> SAN DIEGO FAMILY HOUSING, LLC; LINCOLN MILITARY PROPERTY MANAGEMENT, LP; INDEPTH CORPORATION; and DOES 1 through 25, inclusive, <br><br> Defendants. | Case No.  3:19-cv-2329-JM-MDD <br><br> **THE UNITED STATES' STATEMENT OF INTEREST** |

# INTRODUCTION

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Department of Justice to "attend to the interests of the United States in a suit pending in a court of the United States." 28 U.S.C. § 517. Defendants, San Diego Family Housing, LLC and Lincoln Military Property Management, LP (the "Defendants"), are not entitled to any immunities or privileges derived from their relationship with the Government. Defendants' attempt to utilize a "derivative sovereign immunity" defense is not only legally incorrect and factually inapplicable, but also raises serious policy concerns for future military housing disputes, military branches' relationships with managing members of public/private entities, and the military's relationships with its sailors, soldiers, and their family members who live on military bases.

# BACKGROUND

**A. The Military Housing Privatization Initiative**

In response to poor housing conditions on military bases across the country, Congress enacted the Military Housing Privatization Initiative (the "Privatization Initiative"), Defense Authorization Act, P.L. 104-106, 110 Stat. 186. The Privatization Initiative provided a mechanism to utilize private sector resources to provide higher quality housing accommodations, and to remove the burdens of maintaining and operating housing from military budgets. Congress designed the

Privatization Initiative to attract private sector financing, expertise, and innovation to revitalize military family housing on an accelerated basis as compared to the legacy budgetary processes. S. Rep. No. 104-112, §§ 2811 pp. 329 (1995). Under the Privatization Initiative, the private commercial entity developer "own[s], operate[s] and maintain[s] the houses, and lease[s] the underlying land from the agency for a term of fifty years." Stacie A. Remy Vest, *Military Housing Privatization Initiative: A Guidance Document for Wading Through the Legal Morass*, 53 A.F. L. Rev. 1, 24 (2002) (internal citations omitted). This initiative allowed the Department of the Navy ("Navy") and the other military branches to remove themselves from the distractions of day-to-day housing decisions and management and focus on their core mission of defending the United States.[1]

### B. Defendants' Operation of Military Housing at Naval Amphibious Base Coronado

Pursuant to the Privatization Initiative, Defendants and Navy entered into an agreement where the Defendants *exclusively* hold all rights and powers of management with *full authority* to take all actions necessary as the managing member, and Navy is designated as the non-managing member. *See* Limited Liability Company Operating Agreement ("Operating Agreement" attached as Exhibit 1) at 17 (emphasis added). The Real Estate Ground Lease ("Ground

---

[1] Defendants are referred to as the managing member throughout this filing, however, this usage is not a technical description of the privatized housing entity structure but rather a generalization to illustrate the Defendants day-to-day management and maintenance of the property.

Lease" attached as Exhibit 2) and the Operating Agreement memorialized the respective roles and provided technical requirements for privatizing the housing and leasing the land.  *See generally id.*

Article 5 of the Operating Agreement is entitled "Management of Company Affairs."  *Id.* at 17.  That Article outlines the commitment, rights, and responsibilities of Defendants as "Managing Member."  *See id.*  Defendants were to "develop, construct, maintain, operate and manage the Project to a high level of skill and care" for the duration of the agreement.  *Id.* at 5.  Section 5.01 of the Operating Agreement requires that the Defendants "have exclusive management and control. . . [including] all the rights and powers of a manager . . . [to do] all things which are necessary, proper or desirable to carry out . . . [the] duties and responsibilities . . ." *Id.* at 17.  The Operating Agreement also requires Defendants to carry insurance and indemnify and/or hold Navy harmless for any claims arising out of Navy's participation as a non-managing member.  *Id.* at 52.

**C. Relevant Facts and Procedural History**

Plaintiffs, Lena Childs, Donald Childs, and their two minor children through guardians ad litem, filed their original complaint in state court on May 2, 2019.  Plaintiffs filed their First Amended Complaint (the "Amended Complaint") prior to removal of the case to federal court on October 21, 2019.  The Amended Complaint alleges six causes of action including negligence, nuisance, breach of

contract, breach of implied warranty of habitability, breach of implied covenant of peaceful and quiet enjoyment, and constructive eviction.  Defendants filed a notice of removal to Federal District Court on December 5, 2019, citing two independent bases:  (1) federal enclave jurisdiction; and (2) federal agency status under 28 U.S.C. § 1442.

Plaintiffs' claims arise out of alleged actions or inactions by Defendants taken in connection with their role as the managing members organized under the Privatization Initiative.  Plaintiffs allege that Defendants failed to adequately repair pipes and other leaks, and failed to address ensuing mold, which resulted in high moisture levels.

On April 10, 2020, Defendants filed a motion to dismiss alleging entitlement to government contractor derivative sovereign immunity.  On July 9, 2020, Plaintiffs filed an opposition to Defendants' motion to dismiss.  Defendants filed a reply on July 17, 2020.  The Court vacated the scheduled July 27, 2020, hearing on Defendants' motion after the United States filed a Notice of Potential Participation on July 16, 2020.  The Notice requested a delay on the ruling on Defendants' motion until August 17, 2020, to give the United States an opportunity to analyze whether to submit a Statement of Interest, and obtain the required authorization for same.

# ARGUMENT

Defendants' argument for derivative sovereign immunity fails for two separate and independent reasons.  First, Defendants are mistaken that the United States' sovereign immunity, providing protection from suit and liability, can be conferred upon private parties.  Second, important policy implications proscribe Defendants' defense of derivative sovereign immunity.

### A. The United States' Sovereign Immunity Cannot be Conferred on Private Parties.

The United States Supreme Court has held that "[t]he United States, as a sovereign, is immune from suit save as it consents to be sued . . . ."  *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  Federal sovereign immunity is "jurisdictional in nature" such that "the 'terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain suit.'"  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (quoting *Sherwood*, 312 U.S. at 586) (additional citation omitted).  The United States' sovereign immunity extends to departments and agencies of the federal government.  *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990); *Dorsey v. United States Department of Labor*, 41 F.3d 1551 (D.C. Cir. 1994).

Here, Defendants contend that the Supreme Court recognized that federal government contractors share the United States' immunity when they act pursuant to authority 'validly conferred.'  *See* Defendants' Motion to Dismiss, CM/ECF

Filing No. 19 at 14 (citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 673 (2016) (internal citation omitted)).  Defendants specifically aver that Plaintiffs' claims arise out of actions performed by Defendants "pursuant to agreements with and involving the United States Navy, and not outside of that authority." *Id*. at 17.[2]

To the extent the Supreme Court recognizes "derivative immunity" at all, the Court has determined that such "immunity" is not equivalent to the United States' sovereign immunity from suit and liability.  *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016) (holding the "status as a Government contractor does not entitle it to 'derivative sovereign immunity,' *i.e.*, the blanket immunity enjoyed by the sovereign").  *Campbell-Ewald* held that federal contractors do not "share the Government's unqualified immunity from liability and litigation," and that any protection they have "is not absolute."  136 S. Ct. at 672.

Defendants' reliance on *Yearsley* does not save them.  *Campbell-Ewald* clarified that the government contractor defense discussed in its opinion in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), is a defense to liability, rather than a species of sovereign immunity, which is a defense to litigation.  *See Campbell-Ewald*, 136 S. Ct. at 673.  The Court specifically noted

---

[2] As the managing member of a public/private entity, the Defendants' relationship with the government is different than other government contractors.  Section 7.04 of the Operating Agreement states that "this acquisition is not governed by the Federal Acquisition Regulations ("FAR")."  Operating Agreement at § 7.04.

that in *Yearsley,* the contractor's work "'was all authorized and directed by the Government of the United States'" and that "'there is no *liability* on the part of the contractor' who simply performed as the Government directed.'" *Id.* at 673 (quoting *Yearsley*, 309 U.S. at 20-21) (emphasis added).  In contrast to the defense to liability that *Yearsley* provides, *Campbell-Ewald* explicitly held that federal contractors do not share the United States' "unqualified immunity from liability and litigation." *Id*. at 672.

Additionally, although this Court need not resolve the jurisdictional nature of this issue on the facts presented here, *Campbell-Ewald* makes clear that any "derivative immunity" provided by *Yearsley* and its progeny is non-jurisdictional, and thus, not a means for dismissal under Federal Rule of Civil Procedure 12(b)(1). *Campbell-Ewald* not only discussed *Yearsley* as providing a defense to liability, rather than immunity from suit, but further highlighted that the Court only permitted derivative qualified immunity, which is not jurisdictional.  *Campbell-Ewald, 136 S. Ct. 673 (discussing *Filarsky v.* Delia, 566 U.S. 377 (2012)); *and compare Meyer*, 510 U.S. at 475 (explaining that sovereign immunity is jurisdictional specifically because it stems from the sovereign's absolute power not to be sued).  According to *Campbell-Ewald,* the United States' sovereign immunity belongs solely and purposefully to the Federal Government.  *See Campbell-Ewald*, 136 S. Ct. at 666.  It is not something that can be derived or conferred.

8

THE UNITED STATES'
STATEMENT OF INTEREST

Case No. 3:19-cv-2329-JM-MDD

Under common law, "[i]mmunities, unlike privileges, are not delegable and are available as a defense only to persons who have them." 1 Restatement (Second) of Agency § 217 cmt. B, at 470. In order to claim any privilege derived from the United States, Defendants must be able to convincingly show that their alleged actions and inactions were "all authorized and directed by the Government of the United States." *Campbell-Ewald*, 136 S. Ct. at 672 (quoting *Yearsley*, 309 U.S. at 20). In making this determination, courts look to the agreements between the United States and the private parties. *See, e.g.*, *In re KBR*, 744 F.3d at 345 (requiring adherence to the terms of the agreement with the United States to provide a basis for escaping liability).

Even if Defendants' argument is construed or alternatively interpreted as a grant of a governmental privilege, they are still not entitled to derivative immunity. The terms of the Ground Lease and Operating Agreement give the day-to-day management, business decisions, and authority to make good faith, skillful, careful, and commercially reasonable landlord decisions -- such as those at issue in the Amended Complaint -- solely to the Defendants. *See* S. Rep. No. 104-112, §§ 2811 pp. 329 (1995); Operating Agreement at 17.

The terms of the Ground Lease and Operating Agreement do not show that Navy, as the non-managing member, directed repair and/or maintenance decisions.

THE UNITED STATES' STATEMENT OF INTEREST

Case No. 3:19-cv-2329-JM-MDD

Therefore, since derivative sovereign immunity is not available to Defendants, they must be precluded from asserting this defense.

### B. The Policy Implications for Military Members and their Families Prohibit Derivative Immunity for Defendants.

Defendants' position creates serious policy concerns. If they are granted derivative immunity, significant and perhaps unforeseen problems could occur for families of service members. Commercial entities acting as landlords or managing members for military housing might also declare entitlement to derivative immunity. Inevitably, the armed service branches would presumably deny these military housing claims on the grounds that the negligent conduct was committed by a non-government employee. Thus, bestowing derivative immunity on Defendants would leave service members and their families without recourse.

The types of arrangements at issue here are present on military bases throughout the United States. A holding that a private member of the public/private entity and/or the entity itself are entitled to derivative immunity will imply that they are acting as agents, and are immune from tortious acts stemming from decisions entirely within their discretion. Ultimately, this would give the public/private managing member little incentive to provide quality housing. It would also leave military residents wholly without protection from the independent acts of the public/private managing member and/or the entity itself. This potential

THE UNITED STATES'  
STATEMENT OF INTEREST

Case No. 3:19-cv-2329-JM-MDD

result is certainly outside and even contrary to Congress's intent in enacting the Privatization Initiative.

For the reasons set forth herein, the Court should deny Defendants' motion to dismiss based on derivative sovereign immunity.

Dated: August 17, 2020           Respectfully Submitted,

ROBERT S. BREWER, JR.
United States Attorney

J. PATRICK GLYNN
Director, Torts Branch
Environmental Torts Litigation Section

BRIDGET BAILEY LIPSCOMB
Assistant Director, Torts Branch
Environmental Tort Litigation Section

*/s/ LaCresha A. Johnson*
LACRESHA A. JOHNSON
Trial Attorney, Torts Branch
Environmental Tort Litigation Section
D.C. Bar No. 1017232
United States Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: lacresha.a.johnson@usdoj.gov
Telephone: (202) 616-4447
Fax: (202) 616-4473